JOURNAL ENTRY AND OPINION
Donzell Ward appeals from a judgment of the trial court finding him guilty of robbery following a jury trial and sentencing him to five years incarceration to be served consecutive to a previous sentence he was serving at the time of this trial. He now assigns the following as error, for our review:
 I. THE TRIAL COURT SENTENCED APPELLANT IN A MANNER CONTRARY TO LAW, AND ERRED IN IMPOSING THE MAXIMUM SENTENCE PURSUANT TO R.C. 2929.14(C) WHERE IT DID NOT SET FORTH ADEQUATE FACTORS SUPPORTING THAT THE APPELLANT COMMITTED THE WORST FORM OF THE OFFENSE OR THAT THE APPELLANT POSED THE GREATEST LIKELIHOOD OF COMMITTING FUTURE CRIMES.
 II. APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 III. APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY SECTION 10, ARTICLE 1, OF THE OHIO CONSTITUTION AND THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
Having reviewed the arguments of the parties and the relevant law, we affirm the judgment of the trial court.
On March 28, 2000, a grand jury indicted Ward for robbery and on May 31, 2000, the case proceeded to a jury trial.
In the early morning of January 16, 2000, Jamie Saunt was on her way from the west side of Cleveland to her rabbi's home in University Heights. At trial, she testified she stopped for gas at a BP located at East 140th street and Kinsman. She testified after getting gas, she turned the wrong way and had to turn around on East 139th street. As she proceeded towards the gas station, Ward ran in front of her car and entered through the passenger door. He demanded money and began choking her when she failed to give it to him. She attempted to drive back to the gas station; however, Ward put her car in park and it stalled. Ward pushed her out of the car and the two began to wrestle on the ground. He had his hand on her throat and his knee on her stomach. She was several months pregnant at the time of the attack. Eventually, she relinquished sixty dollars, although part of a twenty dollar bill remained in her hand after Ward ripped it. Ward then ran down the street and drove away in a red car.
Cleveland Police Officers Kevin Grady and David Wagner testified they responded to a radio dispatch and Saunt filed a police report. While at the scene, the officers saw and pursued a car matching the vehicle described by Saunt, but their pursuit was unsuccessful. Officer Grady also participated in a subsequent pursuit which resulted in Ward's arrest on February 2, 2000.
Cleveland Police Detective Timothy Entenok testified he was assigned to investigate the crime. He stated Saunt identified Ward as her assailant through a photo array. He also interview Ward, who stated Saunt approached him and attempted to buy heroin from him.
In its case-in-chief, the defense called Mary Ward, who testified she is Ward's mother. She stated she had given Ward $500 in cash on the day of the incident. Mary Ward further testified Ward was at home with her and could not have robbed Saunt. On cross-examination, however, she admitted she did not know whether Ward had left the house because she had been asleep.
The defense then called Morris Scruggs, a county inmate. He testified on January 16, 2000, he observed Saunt pull into the BP and complete a transaction with a male driving a red Geo Metro. He further stated he saw Saunt later on that same evening waiting by a pay phone. He alleged Saunt told him she was waiting for someone to call because she needed heroin.
The jury returned a guilty verdict on the charge of robbery. Thereafter, the court sentenced Ward to five years imprisonment to be served consecutively to a prior sentence.
In his first assigned error, Ward asserts the court erred when it imposed the maximum sentence because it failed to find that he committed the worst form of the offense or that he posed the greatest likelihood of committing future crimes.
R.C. 2929.14(C) provides:
 * * * the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section.
The law is well defined that this court will not reverse a trial court on issues involving Senate Bill 2, unless the defendant shows by clear and convincing evidence that the trial court has erred. See R.C.2953.08(6)(1) and (d); State v. Berry, 2000 Ohio App. LEXIS 910 (March 9, 2000), Cuyahoga App. No. 75470, 75471, unreported.
In Berry, we examined a similar issue and stated, [w]e therefore, read Edmonson to require when imposing the maximum term under R.C. 2929.14(C) that the trial court must make a `category finding' under R.C. 2929.14(C) and also give its reason for the `category finding' under R.C.2929.14(C).
Here, the judge made the category finding that this was the worst form of the offense of robbery and also that the citizens of the community are endangered by Ward's presence in it. For its reasons, the court stated:
 THE COURT: * * * I see a serious crime that's affected this victim, given her physical, economic, physiological harm. It was a cowardly crime on a woman. A thin little defenseless woman afraid of her own shadow.
 On the streets. She did nothing to induce or facilitate this offense other than be in a spot vulnerable to her attack.
Based on the record, we conclude the court did not err when it imposed the maximum sentence. This assignment of error is overruled.
In his second assignment of error, Ward argues his conviction is against the manifest weight of the evidence. We do not agree.
In State v. Martin (1983), 20 Ohio App.3d 172, the court stated:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
Additionally, the court in State v. Thompkins (1997), 78 Ohio St.3d 380, stated:
 Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicated clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them.
Further, in Tibbs v. Florida (1982), 457 U.S. 31, the Court stated:
 * * * A reversal based on the weight of the evidence, moreover, can occur only after the State both has presented sufficient evidence to support conviction and has persuaded the jury to convict.
In this case, the state assumed the burden to prove all the elements of the crime of robbery. R.C. 2911.02 defines robbery as follows:
 (A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
* * *
 (3) Use or threaten the immediate use of force against another.
Saunt testified Ward entered her car, demanded money, choked her and then wrestled with her on the ground until she relinquished the money in her hand. It is clear, based on her testimony, that the state proved all elements of the crime of robbery. Accordingly, this assignment of error is overruled.
Regarding the claim of ineffective assistance of counsel, Ward argues three errors resulted in his conviction: (1) counsel asked Ward's mother if he is a good son; (2) counsel's failure to ensure the victim's presence during his case-in-chief; and (3) counsel's failure to request a credibility instruction. We are guided by the test set forth in Strickland v. Washington (1984), 466 U.S. 668,687, which states:
 * * * First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.
 Second, the defendant must show that the deficient performance prejudiced the defense.
In order to prevail, Ward must demonstrate that his counsel had been deficient and that the result of the trial would have been different, but for counsel's performance.
In evaluating defense counsel's performance, a reviewing court must accord deference to counsel's strategic choices from counsel's perspective at the time of trial, without the benefit of hindsight. See Strickland, supra. Further, the court in State v. Bradley (1989),42 Ohio St.3d 136, stated in paragraph three of the syllabus:
 In order to show prejudice, the defendant must show that a reasonable probability exists that, absent counsel's error, the result of the trial would have been different.
In this case, defense counsel asked Mary Ward, on direct examination, whether Ward was a good son. Mary Ward replied that he is, but that he has had some problems with the law and has previously been incarcerated.
Thereafter, on cross-examination, the state inquired as to the extent of Mary Ward's knowledge of her son's criminal record. Specifically, the prosecutor asked Mary Ward whether being a good son would include committing a felony assault, possessing drugs or selling drugs. Mary Ward responded no.
Although this line of questioning by defense counsel opened the door for the state to bring out Ward's previous record, he has failed to demonstrate that but for this action, the result of the trial would have been different. The evidence against Ward was substantial and compelling.
Ward next argues he had been denied effective assistance of counsel because defense counsel failed to ensure Saunt's presence during his case-in-chief. However, defense counsel had full opportunity to question the victim on cross-examination.
Finally, a review of the trial transcript reveals that the court did, in fact, instruct the jury regarding credibility of witnesses. Therefore, we have concluded that Ward has failed to demonstrate that but for any of these alleged errors on behalf of defense counsel the outcome of the trial would have been otherwise. Accordingly, we affirm the judgment of the trial court.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., and ANNE L. KILBANE, J., CONCUR.
 _____________________________ PATRICIA ANN BLACKMON, JUDGE: